OSIO (UNITED STATES v.). See Case No. 15,972.

———

## Case No. 10,606.

### The OSPREY.

[1 Spr. 245; [1] 17 Law Rep. 384.]

District Court, D. Massachusetts. Sept., 1854.

COLLISION—STEAM AND SAIL—RULES AS TO COURSES.

1. When a steamer meets a sailing vessel going free, it is the duty of the sailing vessel to keep her course, and the duty of the steamer to keep out of her way, by all reasonable and practicable means in her power, without being restricted to going to the right or to the left, or to any other particular measure.

2. Law of collision generally.

3. General rules as to the course to be pursued by vessels approaching each other, to avoid collision.

[Cited in Crowel v. The Radama, Case No. 3,-442.]

This was a suit in rem, promoted by Kenneth Urquhart and others, owners of the British brig Fanny, against the steamer Osprey, for a collision. At the same time, a cross-libel was promoted by John Linton & Co., of Philadelphia, owners of the Osprey, against the brig Fanny. The two suits were tried together, upon the same evidence and arguments.

R. H. Dana, Jr., and D. W. Gooch, for the Osprey.

The rules in the law of collision, which seem technical and arbitrary, will be found, on careful analysis, to be simple, and founded in equity. All will be found to turn up-

---

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

on the consideration, whether the two vessels meet on terms of equality or of inequality. If the former, the loss and labor of deviation is borne equally. If the latter, the vessel having the advantage takes the whole duty upon herself, and the other vessel keeps her course. If the favored vessel may keep her course, she must do so, that the other vessel may know what to depend upon. Where both vessels are steamers, or both are close-hauled, or both are free, they are equal, and each keeps to the right. The rule, where both are close-hauled, has usually been stated as though the vessel on the starboard tack was favored; but it is really only an instance of the rule, that each keeps to the right. Where one is going free, and the other is close-hauled, they are on an inequality, and the favored vessel takes the whole duty of avoiding the other, and the latter keeps her course. The Gazelle, 2 W. Rob. Adm. 517; The George, 5 Notes of Cas. 368; The Woodrop-Sims, 2 Dod. 83; The Speed, 2 W. Rob. Adm. 225. Where a steamer meets a sailing vessel close-hauled, it is well settled that the latter is to keep her course, and the steamer to get out of her way. The Shannon, 2 Hagg. Adm. 173; The Columbine, 2 W. Rob. Adm. 27; The Gazelle, Id. 517; The Birkenhead, 3 W. Rob. Adm. 75; The Vivid, 7 Notes of Cas. 127. Whenever one vessel is to keep her course, and the other is to take the whole duty of avoiding her, the latter, whether steamer or sailing vessel, is not restricted to going to the right, but may take any course, and resort to any measures, which are most judicious and convenient. The Birkenhead, 3 W. Rob. Adm. 75; The James Watt, 2 W. Rob. Adm. 270; The Northern Indiana [Case No. 10,320]; The Leopard [Id. 8,264]; St. John v. Paine, 10 How. [51 U. S.] 557; Newton v. Stebbings, Id. 590. A steamer meeting a sailing vessel free, is a case of inequality, and should be governed by the latter rule. The proof, in this case, of a usage to that effect, on the American coast, is incontrovertible. It is founded in better policy, because it gives one uniform rule in all cases of steamers meeting sailing vessels, and does away with all inquiries, at the time or afterwards, into the question whether the sailing vessel was close-hauled or free. It is also more equal. The judicial decisions in America favor this rule. The Leopard [supra]; The Northern Indiana [supra]; St. John v. Paine, 10 How. [51 U. S.] 557; Newton v. Stebbings, Id. 590. In the English cases heretofore cited, although the sailing vessels happened to be close-hauled, the rule was not restricted to those cases, and the case of The Shannon, 2 Hagg. Adm. 173, favors the uniform rule. The only case to the contrary is that of The City of London, 4 Notes of Cas. 40. In that case, the court follows a phrase instead of a principle, and feels bound to treat a steamer as a sailing vessel having the wind always free. That phrase was used in cases of steamers meeting vessels close-hauled, and was not intended to apply to and limit cases of steamers meeting vessels sailing free. The rule we contend for is founded in usage, in policy, in equity, and is supported by the weight of judicial authority.

J. C. Park. for the Fanny,

Contended: 1st. That upon the facts in the case, it appeared that the brig was coming up the harbor, about mid-channel. was holding her course nearly before the wind, and did not port her helm, until the steamer had put her helm to starboard, and veered to leeward; that then it was done, to give the steamer more space and more time to "slow," "stop," and "reverse" her engine, and that she (the steamer) should have done this, and thus have avoided the collision. 2d. That if the brig did port her helm, on discerning the steamer, she was right in so doing: and reliance was placed on the judgment of Dr. Lushington, in the case of The City of London (A. D. 1845) 4 Notes of Cas. 40. In that case, which, in most of its facts, was similar to the one at bar, after stating the rule, as well understood, that a steamer is to be regarded as a vessel sailing with the wind free, the court went on to say: "I have had occasion, over and over again, to say in this court, and I will endeavor to put it in the clearest language I can command, that whenever two vessels meet at sea, and there is any probable chance whatever of collision. it is their duty to abide by the principles of navigation, and each of them to take the precaution of putting the helm to port, where both are free, so as to avoid the chance of accident; and for this obvious and plain reason: that in a dark night like this, how often. must it happen, that some doubt will arise, whether the vessel be direct ahead, or one point to the starboard, or to the larboard? And are you to leave to mere chance, the discovering this, with perfect accuracy; or are you not immediately, to adopt that which is the only safe precaution; that is, following out the principle of the order, putting the helm to port at once, and so avoiding the collision?" 3d. That adherence to the rule laid down above, by this highest English authority, would insure against the accident itself, by giving an arbitrary rule, safe and sure, whether there really were danger or not; while the other rule, that the sailing vessel should hold her course, and the steamer choose her course, at her own peril, although it might enable the court to determine with certainty, where the fault lay, after the collision had occurred, furnished, by no means, so sure a mode of avoiding it. 4th. That the rule of keeping to the right, having been adopted and sanctioned by judicial decision, and nine years' uniform practice in England and the British territories (with whom was much of our commercial intercourse), it was the best policy to adopt the same arbitrary rule, for the sake of uniformity of practice. Reverse Dr. Lushington's opinion, and the steamers and sailing

vessels now multiplying between the two countries, must be governed by different rules, depending upon the waters they are navigating. 5th. To give an American decision adverse to that adopted in England for nine years, would place the vessels of the two countries in an awkward position. When two vessels should meet in a narrow channel, in an obscure light, in waters not under the jurisdiction of either government, one would adhere to the American, the other to the English rule, and a collision would be the sure consequence. In obscurity and doubt, an arbitrary uniform rule of action is always the safest. 6th. It was contended, that, on the evidence, the crew of the steamer descried the brig ten minutes before the collision; that the steamer was then going at the rate of six miles an hour, and she must therefore have steamed one mile before the collision; that it had been shown, that she could be stopped in two hundred yards, and, the engineer testifying that the signal to "reverse" only preceded the collision fifteen seconds, that it was culpable negligence in the steamer's crew not to "stop" and "reverse" sooner; even though the sailing vessel had been wrong in "porting" her helm. For each vessel was bound to use all its powers, in order to avoid injury to itself and others. Two wrongs could never make a right.

SPRAGUE, District Judge. In these cases, I have received great aid from the learned and able counsel.

They are cross-libels for damage by collision.

The collision took place about eight o'clock in the evening of the 12th of August last, in that part of Boston harbor called the "Narrows," where the channel is about a fourth of a mile in width. When the vessels discovered each other, the Osprey, a steamer, was going down the harbor, in about mid-channel, at the rate of seven or eight knots, the northern shore being on her larboard hand, and the southern on her starboard. The Fanny, a sailing vessel, was coming up the harbor, nearer to the southern shore, and between the southern shore and the middle of the channel, and her direction was either straight up the channel, or inclined to the south. There was a five-knot breeze from the S. S. W., which was a free wind for the Fanny, being a little abaft her beam, and on her larboard side. Upon discovering each other, the steamer put her helm to starboard, and the Fanny put hers to port, which carried both vessels toward the northern shore, where the collision took place. The steamer went so far as to take the ground on the northern shore, which was very bold, just at the time, or a few seconds before, the vessels came in contact. The Fanny ran head on to the steamer, striking her starboard bow, at an angle of about forty-five degrees.

The collision would have been avoided, by the steamer taking the measure she did, if the Fanny had either kept her course, or put her helm to starboard; and it also would have been avoided, by the Fanny taking the measure she did, if the steamer had put her helm to port. According to the weight of judicial opinion and nautical practice, in England, the brig was right and the steamer was wrong; but, according to the weight of judicial opinion and nautical practice, in this country, the steamer was right and the brig was wrong.

This renders it necessary to examine the question, on principle, as well as on authority. The great increase of navigation within a few years past, and the multiplication of clipper ships and steamers, moving with great speed, and the vast amount of property, and the number of human lives constantly exposed to the dangers of collision, render it of great and increasing importance, that the rules for its prevention should be uniform throughout the commercial world; and that they should be plain and simple, and founded upon principle.

All the rules upon this subject are founded upon the supposition, that there is some reason to apprehend collision; for, if the position and course of the vessels are such that there is no danger of their coming in contact, the rules are not called into action, and each vessel keeps on her course. It is to be premised, in the first place, that the object to be attained is safety; and, in the next place, that it is desirable that this should be attained at the least cost, whether that cost consist in labor, delay, or risk.

All the cases may be comprised in two classes: First, when vessels meet on terms of equality; second, when they meet on terms of inequality. The first comprises three cases, namely:

1st. Two sailing vessels, both going free.

2d. Two steamers.

3d. Two sailing vessels, both close-hauled.

To all these cases, one simple rule may be applied, namely: Both go to the right. This rule is partly arbitrary, and partly founded on substantial reasons. It is arbitrary, so far as it directs to the right rather than to the left; but in requiring both parties to take measures, as far as practicable, to get out of the way, it is founded on principle.

Take the first case,—that of two sailing vessels approaching each other, both having the wind free. By the rule, both must diverge from their course. The reason is, that thus safety is more certain than if one only diverged, and the inconvenience is justly divided between them, as both can deviate from their course with equal facility, and both can, by a free wind, regain the line on which they were sailing before they met.

The same reason applies to the second case, that of two steamers meeting.

In the third case, that of two sailing vessels, both close-hauled upon the wind, the rule, as generally expressed, is, that the one on the starboard tack shall keep on her course,

and the one on the larboard tack shall give way, by porting her helm. But the rule thus expressed is, in effect, a direction to both, to go or keep to the right. The one on the starboard tack, being close-hauled, is already going as far to the right as possible. When, therefore, the rule says she shall keep on her course, it, in fact, says she shall keep to the right. The one on the larboard tack also goes to the right, and she must deviate far enough to avoid the collision. She is thus, indeed, subjected to the whole inconvenience necessary to secure the safety of both, that is, to all the labor, delay, and risk, of diverging to the leeward; but this is because the other vessel cannot diverge from her course, by going farther to windward.

The second class, above mentioned, viz., where vessels meet on terms of inequality, embraces two cases, at least, viz:—

1st. Two sailing vessels, one free, and the other close-hauled.

2d. A steamer and a sailing vessel, the latter being close-hauled.

Here the rule is, that the vessel having the advantage must keep out of the way, and the other must keep her course. Thus, in the first case, that of two sailing vessels, one going free and the other close-hauled, the one having the advantage of a fair wind can diverge from the line of her course, so as to avoid collision, and then return to that line, or take another verging toward it, and carrying her to the same point. But the vessel which is close-hauled, whether on the larboard or starboard tack, can give way only by going to leeward, and cannot regain the line of her previous course, but when she again hauls to the wind, must proceed on a line parallel to her former course. She thus loses the whole distance she has diverged to the leeward, which may sometimes occasion great delay and hazard. The same reasons apply with increased force to the second case, that of a steamer meeting a sailing vessel close-hauled; the motive power of the former giving her a greater advantage than even a fair wind does to a sailing vessel.

We come now to the case before the court, that of a sailing vessel going free, meeting a steamer. Shall we apply to it the rule of the first class, which requires both to go to the right; or the rule of the second class, which requires the one having the advantage to keep out of the way, and the other to keep her course?

1st. A steamer has an advantage over a sailing vessel, even with a free wind. She can oftentimes turn in a shorter time and space, and check, stop, and reverse her motion, in a manner which a sailing vessel cannot. The motive power of the one is under human control, and at all times available; that of the other is not. The wind bloweth not only where it listeth, but when it listeth; and it is of importance to the sailing vessel, to improve it to the utmost, while fair. It may suddenly come ahead, or wholly cease;

and in the latter case, she would be helpless.

2d. Safety and convenience are promoted by having the rules simple, uniform, and governed by a plain principle. If we require a steamer, meeting a sailing vessel, to keep out of her way, and the sailing vessel to keep her course, whether she be going free or close-hauled, we have one plain rule for all cases between steamers and sailing vessels, which may be instantly applied. The moment they see each other, both will know their duty; the one, that she must keep her course; the other, that she must keep out of the way, by all means in her power, without being restricted to the right, or to the left, or to any other particular measure. If we have one rule, when the sailing vessel is close-hauled, and another when she is going free, then the steamer must first ascertain the direction she is sailing, and afterwards whether the wind is fair for that course, which may sometimes be a matter of doubt and difficulty; for the steamer is not as watchful of the wind, and cannot as readily determine its direction, as if she depended on sails. As she moves rapidly, the wind will often appear to be more ahead, and consequently more fair for the approaching vessel, than it actually is, especially if it be light; beside which, the wind may sometimes be baffling. All these doubts and uncertainties will be obviated, by having one rule for all cases of sailing vessels meeting steamers.

3d. The general principle is, that the vessel having the advantage shall take all the burden of keeping out of the way. This principle governs all other cases of inequality, and should be applied to this also, unless there be some necessity for making it an exception.

On the other hand, it may be said, that by requiring both to go to the right, safety will be promoted, as they will separate more rapidly, and also that the inconvenience will be divided, instead of being wholly borne by one. And these considerations certainly have weight. But they apply also to the case of a vessel close-hauled, with her larboard tacks aboard, meeting a steamer; and yet, in such case, those considerations have never been thought sufficient to outweigh the advantage of the other rule. The force of this last remark, however, is weakened by the fact, that the inconvenience of giving way is greater to a vessel close-hauled, than to one going free.

On the whole, the balance of advantage seems to be in favor of one uniform rule.

Let us now see how the question stands upon authority. In the case of The City of London, in the high court of admiralty, in 1845, reported in 4 Notes of Cas. 40, it was decided by Dr. Lushington, assisted by Trinity masters, that in a case like the present, both vessels must port their helm, that is, go to the right. This decision rests entirely on the proposition, that "a steamer is always to be considered a vessel with the wind large." Is this proposition true? It is not laid down

in any statute, admiralty regulation, rule of the Trinity House, or other maritime association: nor required by any judicial decision, or previous nautical usage.

Cases had arisen, of collision between a steamer and a sailing vessel close-hauled, and the courts had decided that, in such cases, the steamer should be under as great obligation as a sailing vessel with the wind large, that is, must keep out of the way: and the reason is obvious. The steamer has at least as great power and ability as such sailing vessels, and therefore should be under as great obligation. But has she not greater power, and may she not be under greater obligation? This question was not involved in these previous cases, and was neither decided nor considered by the court. In those cases, the declaration that a steamer was to be considered a sailing vessel going free, was first made use of. That expression was well enough, for the occasion on which it was used, and taken pro hac vice. But it is not to be presumed that the court intended to lay down the proposition, that a steamer was at all times, and in all cases, to be deemed merely a sailing vessel going free; and if they did, so far as it went beyond the case before the court, it was no decision, but a mere dictum. That expression, or proposition, was taken up by the court in the case of The City of London, and made the sole ground of decision. But it is neither an argument, nor the statement of a principle. It is rather an assertion founded on a comparison; and comparisons may illustrate, but can prove nothing.

I have said that the assertion that a steamer is always to be considered a vessel with the wind large, taken as a general proposition, embracing the case now before us, is not sustained by any previous rule, or nautical usage.

This is confirmed by the very authority which we are now examining. The learned judge does not say, or intimate, that there had been any such rule or practice, in the precise case, viz., a steamer meeting a sailing vessel going free; but states the practice, in the case of two sailing vessels, both going free, and the Trinity rule as to two steamers, and then asserts that the principle of that practice, and the spirit of that rule, are applicable to the new case then before the court. But are they applicable? The two former cases are, as we have seen, those of perfect equality, and the latter, one of inequality. How, then, the principle, or spirit of the rule or practice which governs the former, is applicable to the latter, is not apparent without explanation, and the explanation is not given. It is to be regretted, that that learned and able judge did not go into the rationale of the rule which he was about to adopt, and make a comparison of its advantages and disadvantages, and show that it would conduce to the safety and convenience of navigation. This was not done. The reason assigned is not satisfactory. The decision, however, as an authority upon this

subject, is the highest in England, and entitled to very great respect.[2]

There is a case reported, decided in 1828, The Shannon, 2 Hagg. Adm. 173, in which the opinion of the Trinity masters, and the judgment of the court thereon, seem to be adverse to the decision in the case of The City of London. The report, however, is imperfect.

In the courts of the United States, there have been four cases bearing upon this question. In St. John v. Paine, 10 How. [51 U. S.] 557, a sailing vessel in Long Island Sound, while on her starboard tack, with the wind two points free, came in collision with a steamer. It was decided that the steamer was in fault, because on her rested the obligation to keep out of the way. Mr. Justice Nelson, in delivering the opinion of the court, says that the sailing vessel was nearly close-hauled; and the decision may not perhaps be deemed a direct authority, where she has the wind large, but the remarks of the learned judge fully cover such a case. He says that a steamer has a greater power of directing her course and controlling her motion, than a sailing vessel going free, and is bound to keep out of her way; and that a sailing vessel meeting a steamer may keep on her course, whether she be close-hauled or going free.

The same doctrine is countenanced by the case of Newton v. Stebbins, 10 How. [51 U. S.] 586, in which a sailing vessel coming down the North river, and carried chiefly by the current, the wind being light, came in collision with a steamboat going up. The court held that the steamboat was to blame, in not keeping out of the way; and by the report, it seems that they did not deem it necessary to inquire what was the direction of the wind, or how far it could control the movements of the vessel.

In the case of The Leopard [Case No. 8,264], in the district court of Maine, in 1842, a sailing vessel going up the Kennebec river, with a fair wind, came in collision with a steam ferry-boat. It was held, that the former had a right to keep on her course, and that the latter was bound to keep out of her way, on the ground that the steamer has greater ability than any sailing vessel.

In the case of The Northern Indiana [Id. 10,320], in the Northern district of New York, in the year 1852, a sailing vessel on Lake Erie, on her larboard tack, with the wind one point, or one and a half, free, came in collision with a steamer. It was held, that the former had a right to keep her course, and the latter was bound to take the necessary measures to avoid a collision.

We now come to the evidence of nautical usage. One witness, the pilot who had charge of the Fanny, and whose conduct is now in question, testifies that by the Brit-

---

[2] The law as laid down in The City of London is now established in England, by legislation. 17 & 18 Vict. c. 104, § 296; The Inga, Stu. Adm. 335.

ish practice, when a steamer meets a sailing vessel going free. both port their helm, and that the British steamers which come to Boston always act upon, and inculcate, that rule. On the other hand, several pilots and ship-masters testify, that in such case, on the American coast, the sailing vessel always keeps her course, and the steamer must keep out of the way. Upon the whole, I am led to the conclusion, that when a sailing vessel, going free, meets a steamer, the rule that requires the former to keep her course, and the latter to keep out of the way, is best sustained by principle, by authority, and by the evidence before me of nautical usage. It remains to be seen, whether this rule is applicable to the place where this collision occurred.

There are various exceptions to these general rules, which cannot here be enumerated. In general, they will be found to rest upon the principle, that when the observance of the rule would not promote, but defeat, its great purpose, safety, the rule ceases to be obligatory.

Thus, if there be two sailing vessels, both close-hauled. and the one on the larboard tack is so far to windward of the other, that. if she ports her helm, it will produce collision, the rule ceases to be obligatory. Such distance to the windward has been sometimes defined by saying, that if the vessel on the larboard-tack would, if both keep their course, be struck by the other abaft the beam, on the starboard side, she is not to port her helm.

So also, when collision has become inevitable, the general rules are no longer enforced, but each vessel may adopt such measures as will diminish her danger.

Again, there may be obstructions to navigation, which prevent the application of the rule.

In this case, the vessels were in the Narrows, in Boston harbor, where the channel is a fourth of a mile wide. The banks are bold, and there was no current. rock, shoal, vessel, or other obstruction. to interfere with the application of the rule, and it was therefore obligatory upon both vessels. The Fanny, then, ought to have kept her course, and in deviating from it she did wrong. The Osprey had a right to go to the left, and in putting her helm to starboard, she was not to blame.

But there is another ground, on which it is insisted that the Osprey did wrong, and that is, in not stopping her engine, as soon as she might and ought to have done, after she had put her helm to starboard, and saw that the Fanny had put hers to port. Although the Fanny made a mistake, yet the steamer was still bound to prevent a collision, by all practicable and reasonable means. and when she saw that the Fanny had put her helm to port, she ought promptly to have stopped her engine. if that would have avoided the collision. How is the fact?

(The judge here went into a particular examination of the evidence.) Upon the whole, I do not think that it is shown that the Osprey was negligent in this respect, or in any manner to blame, and the decree must be against the Fanny.

See The Steamer Oregon, 18 How. [59 U. S.] 570.